**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HAROLD V. HOSKINS,** | : | |
| **Petitioner** | : | **CIVIL ACTION NO. 3:18-1701** |
| **v.** | : | **(JUDGE MANNION)** |
| **SUPERINTENDENT KAUFFMAN,** | : | |
| **Respondent** | : | |

## MEMORANDUM

Petitioner, Harold Hoskins, an inmate confined in the State Correctional Institution, Huntingdon, Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. (Doc. 1). He challenges his conviction and sentence imposed in the Court of Common Pleas of Lycoming County. Id. The petition is ripe for disposition. For the reasons outlined below, the petition will be denied.

## I.  Factual and Procedural Background

The facts underlying Hoskin's conviction are contained in the Pennsylvania Superior Court's November 21, 2017 Memorandum Opinion, affirming the dismissal of Hoskins' petition filed pursuant to the Post

Conviction Relief Act (PCRA), 42 Pa.C.S. §§9541-9546. (Doc. 13-2 at 90).

These facts are as follows:

> On Appellant's direct appeal, this Court summarized the underlying facts of the case as follows:
>
> On July 8, 2005, Appellant was drinking and playing poker at the home of James Drummond and his paramour, Linda Bower, along with Donnie Evans. Appellant left the game after he became annoyed when he lost all of his money and no one would give him any more. He returned to the residence, waving a gun and stating it was not an f---ing joke. Appellant pointed the gun at Evans' head and pulled the trigger twice; no shots were fired, but the sound of the gun mechanism clicks [were] heard. Bower later testified that Appellant took a bullet from the .38 revolver and laid it on the table, then immediately put the bullet back into the gun, and pulled the trigger while Evans and Drummond were trying to take it from him. Drummond later testified that Appellant pulled the trigger a third time while the gun was pointed at his, Drummond's stomach. Appellant pulled the trigger a fourth time in an unknown direction, Evans and Drummond wrested the gun away, and police arrived.
>
> Appellant was charged with various offenses, including two counts of attempted homicide, each against Evans and Drummond. A jury trial was conducted on February 2 and 5, 2007, at which Appellant testified in his defense. He was found guilty of all charges.[1] On April 7, 2011, the court imposed an aggregate sentence of twenty-seven to sixty years' imprisonment.
>
> **Commonwealth v. Hoskins**, 48 A.3d 485 (Pa. Super. 2012) (unpublished memorandum at 1-3) (citations, quotation marks, and some footnotes omitted). This Court affirmed Appellant's judgment of sentence on April 25, 2012, **id.**, and our Supreme

---

[1] Following trial, Appellant absconded and a bench warrant was issued. He was apprehended four years later on March 23, 2011. Because the trial judge had retired during the interim, sentencing was assigned to another judge.

Court denied Appellant's petition for allowance of appeal on September 19, 2012. **Commonwealth v. Hoskins**, 53 A.3d 756 (Pa. 2012).

Appellant *pro se* timely filed a PCRA petition on November 21, 2012. Therein, Appellant "alleged after discovered evidence; specifically that Donnie Evans and James Drummond had now changed their testimony that [Appellant] pointed a gun at them and pulled the trigger." PCRA Court Opinion, 3/21/2014, at 2. The PCRA court appointed Jerry Lynch, Esquire, as Appellant's counsel; counsel filed an amended petition on July 9, 2013; and the PCRA court scheduled a hearing. Before the hearing, on November 19, 2013, Attorney Lynch filed a petition to withdraw and no-merit letter pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super 1988) (*en banc*). Therein, Attorney Lynch represented as follows.

> [Appellant's] PCRA [petition] asserted that [Appellant] is entitled to relief in light of after-discovered evidence. The evidence [Appellant] relies upon is two [] notarized affidavits. [Appellant] has presented that the affiants, James Drummond and Donnie Evans, have recanted their prior testimony.
>
> Donnie Evans, in his affidavit, states that he would be willing to testify that "at no time did I see [Appellant] point the gun in anyone's direction." This is actually not a recantation, Mr. Evans did testify to that at trial.
>
> > **QUESTION:** Okay. I believe your testimony was, you don't recall him pointing that gun at anyone in that room?
> >
> > **ANSWER:** That's correct.
>
> N.T., [2/2/2007, at 99]. As such, counsel does not believe that Mr. Evan[s's] testimony would be any more helpful to [Appellant's] case now than it was at trial.

Counsel contacted James Drummond after several attempts. Mr. Drummond has explained that since the trial he began to suffer from diabetes and it [a]ffects his memory. When asked why he would have recanted his prior testimony, he said, "He couldn't remember, maybe that's why" and that "He didn't remember anything about the event or signing the affidavit." In light of Mr. Drummond's failing memory concerning the matter and the inherent unreliability of recantation testimony[,] counsel does not believe that Mr. Drummond's testimony would have changed the outcome of the trial had it been introduced.

**Turner/Finley** "No Merit" Letter, 11/19/2013, at 2-3 (pages unnumbered).

Counsel's **Turner/Finley** letter also noted that Appellant wished to raise a new issue "concerning whether a .38 handgun was capable of firing a .32 caliber bullet." **Id**. at 3. The PCRA court ordered counsel to file an amended petition raising the new issue or to file another **Turner/Finley** letter. Shortly thereafter, Appellant *pro se* sent a letter to the PCRA court noting four complaints about the way that this trial counsel dealt with issues related to the handgun. By order of December 30, 2013, the PCRA court filed Appellant's letter and directed a copy to be forwarded to Attorney Lynch pursuant to Pa.R.Crim.P. 576(A)(4).

On January 13, 2014, counsel filed a new petition to withdraw, opining therein that trial counsel was not ineffective in failing to pursue the questions of the Commonwealth's firearms witness that Appellant claims he should have asked. Petition to Withdraw, 1/13/2014, at ¶6. By opinion and order of March 21, 2014, the PCRA court thoroughly examined the new firearms issue and agreed with Attorney Lynch that it lacked merit and no hearing was necessary. Accordingly, the PCRA court granted counsel's petition to withdraw and issued notice pursuant to

Pa.R.Crim.P. 907 of its intent to dismiss Appellant's petition without a hearing. Appellant responded to the notice, reiterating both his original claims regarding the witnesses' recantations of their trial testimony and his claims regarding trial counsel's questioning about the handgun. Reply to Notice to Dismiss, 4/7/2014, at 1-2. The PCRA court, noting the lack of new issues in Appellant's response, dismissed the petition by order filed on June 6, 2014.

Appellant timely filed a notice of appeal on June 26, 2014. The PCRA court ordered Appellant to file a concise statement of errors raised on appeal, and Appellant timely complied on July 17, 2014, listing the same issues raised in his response to the 907 notice.

No further activity appears on the docket until June 8, 2015, when the clerk of courts filed an order of our Supreme Court denying a petition for writ of mandamus that Appellant filed in that court seeking to compel the PCRA court to forward his notice of appeal to this Court. Another lengthy gap is followed by an order of September 30, 2016, directing the clerk of courts to docket the notice of appeal as having been filed on June 26, 2014. By order of November 7, 2016, the PCRA court adopted its March 21, 2014 order as its opinion.

(Doc. 13-2 at 90-94, Pennsylvania Superior Court Memorandum Opinion).

On November 21, 2017, the Pennsylvania Superior Court affirmed the PCRA court's order dismissing Hoskins' PCRA petition. Id.

On August 28, 2018, Petitioner filed the instant petition for writ of habeas corpus, in which he raises the following two issues for review:

1. Trial counsel was ineffective for failing to hire an expert to challenge the Commonwealth's witness concerning ballistic findings.

2. PCRA counsel was ineffective for failing to raise a claim of ineffective assistance of counsel for failing to challenge the discretionary aspects of sentencing.

(Doc. 1, petition).

## II.  **Legal Standards of Review**

A habeas corpus petition pursuant to 28 U.S.C. §2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973). Hoskins' case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"). 28 U.S.C. §2254, provides, in pertinent part:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

(b)(1) an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –

(A) the applicant has exhausted the remedies available in the courts of the State;

....

- 6 -

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254. Section 2254 clearly sets limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner. Cullen v. Pinholster, 563 U.S. 170, 181 (2011); Glenn v. Wynder, 743 F.3d 402, 406 (3d Cir. 2014). A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). "[F]ederal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990); see also Pulley v. Harris, 465 U.S. 37, 41 (1984). By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," §2254 places a high threshold on the courts. Additionally, relief cannot be granted unless all available state remedies have been exhausted, or there is

an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant. See 28 U.S.C. §2254(b)(1).

## III.    Discussion

### A. Exhaustion and Procedural Default

Habeas relief "shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State," meaning a state prisoner must "fairly present" his claims in "one complete round of the state's established appellate review process," before bringing them in federal court. 28 U.S.C. §2254(b)(1)(A); see also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (stating "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, ... state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process."); see also Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 275 (1971); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). The exhaustion requirement is grounded on principles of comity in order to ensure that state

courts have the initial opportunity to review federal constitutional challenges to state convictions. See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

A petitioner has exhausted a federal claim only if he or she presented the "substantial equivalent" of the claim to the state court. Picard, 404 U.S. at 278. To satisfy this requirement, a petitioner must "fairly present" his federal claim's "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." Robinson v. Beard, 762 F.3d 316, 328 (3d Cir. 2014); see Baldwin v. Reese, 541 U.S. 27, 29 (2004); see McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999).

### 1. **Ground One**

In Ground One, Petitioner claims that trial counsel was ineffective for "failing to impeach the Commonwealth's firearms expert and that counsel was unable to do so because he had failed to obtain a firearms expert for the defense" and "had counsel done so, he would have been able to impeach the Commonwealth witness with plain and specific facts such as 'a .32 bullet (live ammunition) cannot be fired from a .38 caliber revolver because the firing pin does not position itself with the revolver's hammer to allow the primer to ignite-thus causing the gun powder in the bullet casing to explode-sending the bullet projectile out of the hand-gun barrel, in excess of 2,000 feet per second." (Doc. 1 at 20). Petitioner believes that the "facts that could

have been utilized to impeach Officer Douglas-were never utilized because of Counsel's lack of knowledge about the firearm in question." Id. Petitioner raised this issue in his initial PCRA proceedings and the PCRA court adjudicated the claim on the merits. (Doc. 13-2 at 84-87). However, he failed to pursue the claim in his PCRA appeal. Hoskins concedes that this claim is unexhausted and procedurally defaulted. (Doc. 1 at 33-35).

In his traverse, Hoskins indicates that he is relying on the Martinez v. Ryan, 566 U.S. 1 (2010) exception to excuse the procedural default of his claim. (Doc. 19, at 2-5). Specifically, Martinez holds that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. at 9. To successfully invoke the Martinez exception, a petitioner must satisfy two factors: that the underlying, otherwise defaulted, claim of ineffective assistance of trial counsel is "substantial," meaning that it has "some merit," id. at 14; and that petitioner had "no counsel" or "ineffective" counsel during the initial phase of the state collateral review proceeding. Id. at 17; see also Glenn v. Wynder, 743 F.3d 402, 410 (3d Cir. 2014).

Here, however, because Petitioner alleges that appellate PCRA counsel rendered ineffective assistance, his procedural default is not

- 10 -

excusable under the <u>Martinez</u> exception. <u>See</u> <u>Norris v. Brooks, 794 F.3d 401, 404 (3d Cir. 2015)</u> ("[T]he Court stated that the [<u>Martinez</u>] exception applies only to attorney error in initial-review collateral proceedings, not appeals from those proceedings."); <u>Cox v. Hor</u>, <u>757 F.3d 113, 119 (3d Cir. 2014)</u> (requiring a prisoner to show "the default was caused by ineffective assistance of post-conviction counsel or the absence of counsel [ ] in the initial-review collateral proceeding"); <u>Garcia v. Pennsylvania,</u> <u>No. 3:14-CV-2214, 2018 WL 5981678, at *5 (M.D. Pa. Nov. 14, 2018)</u> (citing <u>Martinez</u>, <u>Norris</u>, and <u>Cox</u> to conclude same).

In his traverse, Petitioner asserts that PCRA counsel's ineffectiveness establishes cause and prejudice to overcome his procedural default of Grounds One. (Doc. <u>19</u>, at 2-5). For <u>Martinez</u> to apply, Petitioner must show that his ineffective assistance of trial counsel claims have "some merit," and that he had ineffective counsel or no counsel at the initial-review stage of the state collateral proceeding. <u>See</u> <u>Workman v. Sup't Albion SCI, 915 F.3d 928, 937 (3d Cir. 2019)</u>. Here, Petitioner's state-appointed attorney withdrew pursuant to <u>Finley</u> and filed a letter of no-merit. The Third Circuit has concluded that a <u>Martinez</u> inquiry "focuses on whether counsel, not the prisoner, raised the ineffective assistance of counsel claim at the initial

review collateral proceeding." Mack v. Sup't Mahanoy SCI, 714 F. App'x 151, 153 (3d Cir. 2017).

In Mack, the court also held that where a petitioner fails to raise an ineffective assistance of counsel claim in responding to a letter of no-merit, the claim may still be excused by Martinez if "PCRA counsel was ineffective for filing a no-merit letter and not raising [the petitioner's] ineffective assistance claim." Id. at 154. Therefore, if Petitioner's PCRA counsel was ineffective for not raising these claims of ineffective assistance of trial counsel in his no-merit letter, and if Petitioner's ineffective assistance of trial counsel claims are "substantial," or have "some merit," then Martinez would apply to excuse Petitioner's default. See Workman, 915 F.3d at 937.

Upon review of the record, the Court concludes that PCRA counsel did raise Petitioner's claim of trial counsel's ineffectiveness in his no-merit letter. (Docs. 13-1 at 44 and 13-2 at 3). The PCRA court addressed Ground One in its Notice of intent to dismiss Petitioner's PCRA petition as well as its Order denying his petition. (Doc. 13-1 at 1, 9). Thus, Petitioner cannot rely upon the purported ineffectiveness of initial-review PCRA counsel to excuse his procedural default.

Rather, Petitioner procedurally defaulted Ground One by failing to raise it on appeal from the denial of his PCRA petition and, as noted above, he cannot reply upon appellate PCRA counsel's failure to raise such claims to overcome his default.

Although Ground One is procedurally defaulted, Respondent also argues that it lacks merit. (Doc. 13 at 13-14). Accordingly, the Court will address the merits of this ground below.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." See id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the petitioner must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence

in the outcome." See id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in the performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987). As a result, if a petitioner fails on either prong, he loses. See Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted); Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one.").

The two-pronged test established in Strickland "qualifies as 'clearly established Federal law' " for purposes of the AEDPA. See Rainey v. Varner, 603 F.3d 189, 197 (3d Cir. 2010) (quoting Williams v. Taylor, 529 U.S. 362, 391 (2000)).[2] Therefore, under §2254(d)(1), the relevant inquiry in assessing ineffectiveness claims that have been adjudicated on the merits is whether the state court's decision involved an unreasonable application of Strickland

---

[2] The standard under Pennsylvania law for ineffective assistance of counsel is consistent with the two-prong Strickland analysis. See Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000).

or are based on an unreasonable determination of the facts. See Jacobs v. Horn, 395 F.3d 92, 107 n.9 (3d Cir. 2005). Moreover, Pennsylvania's three-pronged test for ineffective assistance claims, see Commonwealth v Pierce, 515 Pa. 153, 527 A.2d 973, 975-77 (Pa. 1987), is not contrary to Strickland, see Jacobs, 395 F.3d at 107 n.9.

Petitioner claims that counsel was ineffective for failing to hire an expert to challenge the Commonwealth's witness concerning ballistic findings. (Doc. 1).

The record reveals that Officer Douglas testified that the he fired the weapon a .32 caliber revolver recovered at the scene, and it functioned properly when he test fired .32 cal. ammunition for that weapon. (Doc. 13-3 at 170-174). The Commonwealth submits that Officer Douglas' testimony didn't constitute expert testimony but, even if it did, Officer Douglas was qualified to give expert testimony, as his testimony established that since 1985 he was a firearms instructor and had attended numerous firearms instruction courses and that he was familiar with revolvers and semiautomatics. (Doc. 13 at 13).

Petitioner also contends the wrong gun was test fired because there was testimony that the gun used by petitioner was a .38 caliber handgun not a .32. (Doc. 1 at 24). For this argument petitioner relies on the statement in

the trial and Superior Court opinions that a .38 cal. gun was utilized. Id. However, a review of the testimony at trial reveals that there was no testimony that a .38 cal. weapon was used. (See Doc. 13-3). While witness, James Drummond referred to a .38 gun, he testified he "thought it was a .38, but it wasn't a .38". Id. 147.

The PCRA Court rejected Petitioner's challenge to the handgun used at the scene, and the need for an expert, in its Opinion and Order dismissing Petitioner's PCRA petition, as follows:

> The Defendant alleges that trial counsel should have known that the firearm testified by the firearms instructor was not the firearm in possession by the Defendant at the time of the alleged incident. To make a claim for ineffective assistance of counsel, a defendant must prove the following: (1) an underlying claim of arguable merit; (2) no reasonable basis for counsel's act or omission; and (3) prejudice as a result, that its, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different. Commonwealth v. Cooper, 941 A.2d 655, 664 (Pa. 2007) (citing Commonwealth v. Carpenter, 725 A.2d 154, 161 (1999)). A failure to satisfy any prong of this test is fatal to the ineffectiveness claim. Cooper, 941 A.2d at 664 (citing Commonwealth v. Sneed, 899 A.2d 1067, 1076 (2006)). Further, Counsel is presumed to have been effective. Id.

> The Defendant's claim is without merit and inconsistent with this own testimony at trial. The Defendant's testimony at trial was that he was never in possession of any firearm:

>> PETCAVAGE: Okay. You wanted more than the—

>> DEFENDANT: Exactly, then just that little bag. I wanted more. That little bag wasn't enough. Then we started

arguing. So, he looked – he looked over at Donnie, and Donnie looked over at the other guy. They didn't want me interrupting the card game. And then one thing led to another one. And then I hit him.

PETCAVAGE: Who hit who?

DEFENDANT: I hit James.

. . .

DEFENDANT: An then it was a – you know, it was just like a brawl. And then he was like, you know, man, you messing up my card game. You know, you F'in up the money, you know. Get your drugs, and you know, yourself on out of here. And – but at that time, I was mad. And I was just, you know, swinging. And I was fighting. And we was just fighting. A brawl broke out. You know, just like that, a brawl broke out; and once the brawl broke out, a gun hits the floor.

. . .

DEFENDANT: Now, where the gun came from, I don't know.

PETCAVAGE: Okay. Let's back up a little bit. When you came into the house the second time when you came back, you were in possession of a gun?

DEFENDANT: No, I wasn't. I don't own no guns.

PETCAVAGE: Okay. And from what you've just testified – did you at any time walk into the dining room and pull a gun out?

DEFENDANT: No, I didn't.

. . .

- 17 -

DEFENDANT: That time, the whole card game, you know, the table and everything went up, you know, and – you know, a roll, you know, just like boom, boom, like you know, because thing was, you know, bumping.

PETCAVAGE: Sure.

DEFENDANT: And then all I seen – somebody said gun. And I looked down on the floor, there was the gun, which it had to come from under the table.

N.T., February 2, 2007, p. 234-36. The Defendant is contending that he committed perjury at trial when he stated that he never had a firearm and that he did in fact have a firearm, but just not the one in possession of police.

There are many issues with the Defendant's contention, however, there is no allegation that trial counsel was aware of the firearm or that he should have been aware. In fact, if trial counsel knew that the firearm was wrong he would not have been permitted to allow the Defendant to testify at the trial, as he would have known the Defendant was committing perjury. The Defendant has not alleged or established that the wrong firearm was within his counsel's knowledge; especially since it conflicted with his own testimony at trial. See Commonwealth v. Duffey, 889 A.2d 56 (Pa. 2011).

Additionally, the Defendant has not established that the police collected the wrong firearm and that the firearm he used was inoperable. The Defendant contends that his firearm was a .38 and Douglas testified regarding a .32. Drummond testified that he was mistaken when he believed the Defendant's firearm was a .38 and that he did not remember the gun. N.T., February 2, 2007, p.132, 147. Drummond testified that he had spent time in the hospital and did not remember the incident. Id. at 82. Donnie Evans, however, testified that Drummond was the last person to have the firearm. Further, Officer Eric Delker (Delker) of the Williamsport Bureau of Police testified that Drummond pointed to a coat after the incident to where the gun was located. Id. at 181. Delker testified that exhibit 1, which was the .32 tested by

- 18 -

Douglas, was the firearm retrieved from the coat. Id. at 182. The Commonwealth established that the firearm collected was the one identified by witnesses and that no other firearm was collected.

Finally, the Defendant's issue is without merit because he also was not prejudiced. The record is clear that trial counsel generally attempted to imply that the firearm belonged to another black male in the residence. The Defendant specifically alleges that Douglas, the firearm instructor, should have been cross-examined on whether the firearm was the correct firearm. Douglas, however, received the firearm from other officers and was never at the scene of the incident.

> PETCAVAGE: Officer Douglas, you had no involvement in this investigation other than with respect to what you've now testified to in analyzing the gun, is that correct?
>
> DOUGLAS: That is correct. And entering the cocaine into the envelope.
>
> PETCAVAGE: Okay. And you got the gun that you've now testified to that you tested from whom?
>
> DOUGLAS: On July 8th, it was given to me by Officer Roy.
>
> PETCAVAGE: Okay. So the only thing you could testify to was that you were given a gun by Officer Roy to test?
>
> DOUGLAS: That is correct.
>
> PETCAVAGE: Okay. So you cannot in any way identify where that gun came from or whose gun it was, can you?
>
> DOUGLAS: That is correct.

Id. at 174-75. Douglas could not have been cross-examined regarding whether the correct firearm was collected. Based on the record, this Court finds that the Defendant's PCRA Petition is without merit.

(Doc. 13-2 at 11-14).

"There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." Harrington v. Richter, 562 U.S. 86, 109 (2011). With respect to a claim that counsel failed to call a certain witness, a petitioner "cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense. Rather, he must set forth facts to support his contention." Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir. 1991). Here, Petitioner fails to explain how the testimony of an expert would have changed the outcome of his trial. Petitioner's own trial testimony belies the need for an expert to challenge the type of weapon, as Petitioner, himself, testified at trial that the was never in possession of a weapon. Additionally, the testimony of Officer Douglas reveals that he was not the officer who retrieved the firearm at the scene; further demonstrating that an expert was unnecessary to challenge Officer Douglas' testimony to determine if the correct firearm was collected from the scene. The Court agrees with Respondent that Petitioner has not demonstrated that the state court's disposition of this claim was contrary to, or was an unreasonable

application of, United States Supreme Court precedent. Moreover, Petitioner has not demonstrated that the state court's determination of the facts was unreasonable. As such, Hoskins has failed to show that PCRA counsel was ineffective or that he was prejudiced by the alleged ineffectiveness, so as to excuse his procedural default of this claim.

### 2. **Ground Two**

Petitioner claims that "no counsel, throughout the various stage of this case, ever challenged the 28 to 60 year sentence (aggregated) and no counsel ever challenged the nearly maximum consecutive sentences on the lead charges." (Doc. 1 at 29). Specifically, Petitioner claims that while "out on bail release pending sentencing," the "police utilized Petitioner to assist them in several cases and for that the police would notify the court of the Petitioner's cooperation and that the Commonwealth would recommend a lower sentence based upon the recognized cooperation that Petitioner did provide to the Commonwealth." Id. at 16. He states that "the Commonwealth reneged on its agreement to recommend a significantly lower sentence" and "neither trail counsel or PCRA counsel, for that matter, ever did raise this claim…" Id. Thus, Petitioner concedes that this claim is unexhausted and procedurally defaulted. However, he fails to show that PCRA counsel was

ineffective or that he was prejudiced by the alleged ineffectiveness, so as to excuse his procedural default of this claim, as the instant claim lacks merit.

Under Strickland, Petitioner must show his counsel's actions fell "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. He must also show there is a reasonable possibility the outcome of the underlying proceeding would have been different if not for his counsel's deficient performance. Lewis v. Horn, 581 F.3d 92, 106-107 (3d Cir. 2009). Failing to raise a meritless claim on appeal does not constitute ineffective assistance. Singletary v. Blaine, 89 Fed.App'x. 790, 794 (3d Cir. 2004). A state court's factual determinations are entitled to a highly deferential presumption of correctness. 28 U.S.C. §2254(e)(1).

In order to challenge the discretionary aspect of sentencing a petitioner must establish in the state court that a substantial question exists, that is whether the sentencing judge's action were inconsistent with a specific provision of the sentencing code or contrary to the fundamental norms which underly the sentencing process. Commonwealth v. Proctor, 156 A.3d. 261 (Pa Super. 2017). To obtain relief the defendant must establish the sentencing court either ignored or misapplied the law, exercised its judgment for reasons of partiality, ill will or arrived at a manifestly unreasonable decision. Commonwealth v. Sheller, 961 A.2d. 187 (Pa Super. 2008).

Here, Petitioner does not point to any of these factors. Instead, Petitioner focuses only on his displeasure that he did not receive a reduced sentence based on his cooperation with the police. The sentencing judge however, rejected Petitioner's claim as follows:

> THE COURT: . . . Now, have I ever not factored in cooperation? No. I've always considered that. But like I said, you biggest obstacle you have to surmount is the fact that you have went in the wind for four years and that – that basically all but negates the cooperation that you have made because I have no choice but to send a message to the universe, which is, you can't do this. You can't come in, be held accountable, be taken at your word that you're going to do what you're supposed to do and then turn your back on us and not suffer some kind of consequence as a result. Because if that were the case, then nobody would show up for court, everybody would think well it doesn't really matter to me one way or the other I'm still going to get the same sentence than I might as well do whatever I want to do and that's not accurate.
>
> . . .
>
> The most sentence that I can conceivably, I believe, can sentence you to is a 10 to 20 because there are two separate victims in the case. You're going to be sentenced 10 to 20 years on each of those charges. Because there is a separate robbery offense I'm going to sentence you separately on that, too.

(Doc. 13-3 at 291-293).

The Court finds the state court's determination is not contrary to clearly established federal law or an unreasonable determination of the facts. The sentencing court considered the nature of the offense, the sentencing guidelines, Petitioner's prior criminal history, his absconding for four years

- 23 -

following his conviction, and his cooperation and Petitioner's representation concerning that cooperation. (Doc. 13-3 282-285, 289-294). Petitioner's claim is without merit. As such, Hoskins has failed to show that PCRA counsel was ineffective or that he was prejudiced by the alleged ineffectiveness, so as to excuse his procedural default of this claim.

## IV.   Certificate of Appealability

Pursuant to 28 U.S.C. §2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. §2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. §2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). Petitioner fails to demonstrate that a COA should issue.

The denial of a certificate of appealability does not prevent Hoskins from appealing the order denying his petition so long as he seeks, and

obtains, a certificate of appealability from the Third Circuit Court of Appeals.

See Fed. R. App. P. 22(b)(1).

## V.   **Conclusion**

For the reasons set forth above, the petition for writ of habeas corpus

pursuant to 28 U.S.C. §2254 will be denied.

An appropriate order follows.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: January 19, 2021**
18-1701-01